1998-CI-03821

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
8/4/2015 1:05:25 PM
KEITH E. HOTTLE
Clerk

SARRO                          *          IN THE JUDICIAL DISTRICT

V.                             *          73RD DISTRICT COURT

SARRO                          *          BEXAR COUNTY, TEXAS

_____

REPORTER'S RECORD

HONORABLE BARBARA NELLERMOE BY TELEPHONE

JUNE 11, 2015

_____

On the 11th day of June, 2015, the above-entitled cause came on to be heard before the Honorable Barbara Nellermoe by telephone in the 57th District Court of Bexar County, Texas, whereupon the following proceedings were taken by machine shorthand.

A P P E A R A N C E S

ATTORNEY FOR PETITIONER
      Mr. John Mead
      310 S. Saint Mary's Street, Suite 1470
      San Antonio, TX  78205
      210.222.0981

ATTORNEY FOR RESPONDENT
      Ms. Rachel Sadovsky
      10101 Reunion Place, Suite 250
      San Antonio, TX  78216
      210.812.3400

P-R-O-C-E-E-D-I-N-G-S

THE COURT: This is cause number 1998-CI-03821, styled in the matter of the marriage of Michael A. Sarro and Ann Sarro and in the interest of Michael Andrew Sarro, a minor child. Did that come through?

COURT REPORTER: Yes, ma'am.

THE COURT: Okay. Then I would like to have counsel to make their announcements for the record.

MR. MEAD: Yes, Your Honor, John Mead appearing for Robert Willmann, who's the movant in the motion for new trial that's being heard today.

MS. SADOVSKY: And Rachel Sadovsky representing Michael Sarro.

THE COURT: Okay. Then let's go ahead with the motion for new trial, and after that I will hear the response. By the way, I want to thank you all for e-mailing to me these pleadings, and I have reviewed all of them this morning, so we can now proceed. Okay.

Mr. Mead, you may proceed.

MR. MEAD: Yes, Your Honor. First I'd like to ask Your Honor, is one of the pleadings you received the reply by Joyce Sarro to the response to motion for new trial?

THE COURT: Yes, I did.

MR. MEAD: Okay, good. First I'd like to begin, Your Honor, by asking the court to make the motion for new trial and the affidavits and other evidence attached to it part of the record in this case.

THE COURT: Is there any objection to that?

MR. MEAD: Pardon me?

THE COURT: I'm asking if there's any objection.

MS. SADOVSKY: Um, there's no objection, Your Honor.

THE COURT: Then that is granted, and they are admitted as exhibits to this record.

(No documents were tendered

(to the court reporter.

MR. MEAD: Your Honor, I'm appearing today at the request of Robert Willmann, who is the person that's handling the post judgment matters in this case. He has a problem with his mother being very ill, and he could not leave her, so that's the reason I'm here. I have reviewed the documents that you have, Your Honor. I reviewed the motion for new trial prepared by -- and filed by Mr. Willmann. I've reviewed the response prepared and filed by Ms. Sadovsky, and I've reviewed the response to Ms. Sadovsky's response

prepared and filed by Mr. Willmann.  I think those documents more or less speak for themselves.  There are a couple points I would like to make, and the rest of the points, I believe, are made already by the documents that you have before you.

This motion for new trial is based substantially and completely, for all practical purposes, on the lack of a record.  Little history on the case.  You probably don't remember, but you were involved way back when, and this is a case that was heard.  Final hearing was in 2004.  During -- throughout that time, both my client and Ms. Sadovsky's client were represented by counsel.  For several years after that 2004 hearing, I urged Mr. Sarro's counsel to conclude the matter, which never took place.  After a few years, I just finally kind of gave up on that.  My client had refused to allow me to approve the decree, and I told him, look, guys, you need to just set it for a motion to sign, get it done.  That never happened.

When Ms. Sadovsky got in this case, we were involved in a modification, because there's an adult disabled child, and you have those documents before you, too, I believe, in her response, which we settled some time back.  At that point I told Ms. Sadovsky that the problems that I'd been having

trying to get Mr. Sarro's attorneys to get this thing done, and she took it upon herself to push the thing forward, and we finally got it done. I don't remember the date off the top of my head. Some time --

MS. SADOVSKY: It was in 2015.

MR. MEAD: Yeah, it was earlier this year.

MS. SADOVSKY: April, 2015.

MR. MEAD: April.

MS. SADOVSKY: I'll tell you in a second.

THE COURT: April 1st.

MS. SADOVSKY: April 1st, yes. Which you, in fact, signed.

MR. MEAD: We finally -- we finally got that done, and my client requested that I refer to someone who might handle an appeal for her, which she did. Which I did, and she hired Mr. Willmann to represent her on this case. Although my name's included in the proceedings, he's the person who's actually doing the work, except for today. The motion for new trial was timely filed, or we wouldn't be here today. The hearing is timely, or we wouldn't be here today.

And the issue -- one of the major issues raised by Ms. Sadovsky was the issue with regard to, I believe, addressing the timely request of a record. The

problem we have is there is no record, and Mr. Willmann requested a record and discovered that it was not available, and that is the basis for his motion, as I'm sure you've read, and that's -- all the arguments that support that are in the motion.

I won't waste time by arguing points that you can read just as well as you can hear me talk about 'em. And, with that, I will turn the floor over to Ms. Sadovsky.

MS. SADOVSKY: Well, good morning, Your Honor.

MR. MEAD: We are on the floor, by the way.

MS. SADOVSKY: Yeah, we're standing by the phone to make sure you can hear us. Well, first of all, you said you did read my response, so I agree with Mr. Mead. I'm not trying to belabor the points. However, my client strongly objects to this. As you can see, there's a long procedural history. This is the second time that she's filed a motion for new trial to address the property issue. In 2004 you have the final hearing. You confirmed all of the points and all of the property disputes.

We are not saying that this was not timely filed. My argument for latches is focused on the

fact that there was no record, and it's very clear at the time she didn't like the court's ruling, and she could have gotten a record. And I see this as a backdoor way to -- because without a record, they're not going to be able to be successful with an appeal. To try, with no good grounds, to move forward with a new trial, simply because there's no record, which was within their control. It's not surprising she's disputing this. She disputed it before. So it's completely foreseeable that they would need a record, and I find her lack of getting a record -- she was waiting for my client, nearly 11 years later, to finalize this, to then jump onboard to try and get more of the pension.

As you understand, I'm sure, you know, a divorce is not severable, so this would then reopen the divorce, would absolutely create unfairness to my client. In the reply brief Mr. Mead -- actually, I'm not sure who wrote this.

MR. MEAD: Mr. Willmann.

MS. SADOVSKY: It was Mr. Willmann who wrote the reply brief. He quotes to 320 -- trial rules of civil procedure 320. The first step is you must -- it must appear to the court that a new trial should be granted. That's the first step, Your Honor. The second

is it is clearly severable, the issue, without unfairness to the parties. My client thought he got divorced in 1998. Then he found out it wasn't completed, had to wait a long time. They had another hearing in 2004 finalizing it.

She's arguing over those six years. If this gets opened, she could then say the party has not been -- they have not divorced, because it reopens, and what ends up happening is my client, then, is possibly open to having the rest of his pension split and given more to her. It's completely unfair. To me, Ms. Sarro was well aware of what the process was, and she was sitting back waiting for my client to do this.

My client is older. He's looking to retire. In fact, the affidavit I attached was a year ago when we thought he was going to be able to retire. He's not been able to retire because of all this. And the fact that there's an adult disabled child, that's new information, and even if you look at the order, it states it's not a permanent disability, so that's going to be reviewed at some point.

Your Honor, I just -- I strongly object. And I think, as I pointed out in my response, there's very good reason and basis in law. The other one point I wanted to make is in Voltrain versus Voltrain

(phonetic), it states the court cannot grant a partial new trial on certain property issues. It must grant a new trial on all issues since they may not be severed. So the request of just addressing the pension would not be valid anyway. It would have to open all of the property issues.

I believe that is all my points at this moment, Your Honor.

THE COURT: Thank you.

MS. SADOVSKY: Uh-huh.

THE COURT: Is there a reply, Mr. Mead?

MR. MEAD: Just briefly, Your Honor. As I said, we -- I tried for years to get this case concluded. If that happened when I was requesting Mr. Sarro's counsel to do that, we would not be here talking about this. There would be a record. The only thing -- the only -- the only way that my client's going to have the right or the opportunity to appeal the ruling of the court is if the court grants a new trial, because there is no record from the -- from the 2004 trial. So she's going to be denied her right to appeal the ruling based upon the fact there's no record, and that's the basis and the rule upon which Mr. Willmann relies in his motion for new trial that's here before the court today.

THE COURT: Well, what a tortured, tortured procedural case.

MS. SADOVSKY: Accurate. That would be accurate.

MR. MEAD: I will not disagree with that, Your Honor.

THE COURT: First of all, let me just say as an aside that my sympathy goes with Mr. Willmann in his absence. I totally understand it. He has been caring for his mother for many years when she has been -- she's fragile, and I know he's been very devoted -- very devoted son to her, and so I certainly understand why he's not here arguing, although he was preparing the post judgment matters for his client.

On the issue of lack of record, I just think at this point -- I know there are cases that grant new trials or appellate cases that grant reversals and new trials, but generally in a situation where there's a default judgment, there isn't an attorney on one side or something like that, and in this case the difficulties in reaching conclusions have been hard on everybody, the parties certainly, but also with the lawyers getting this done.

I don't think at this point I find that as a plausible ground for new trial. It could have been

requested in a timely fashion back in 2004 or 2005, so I agree with the response that it was foreseeable and it could have been requested a while ago. I also don't believe I can grant a new trial just on the property issues only. I agree with the law on that, and for those reasons I will deny the motion for new trial.

MR. MEAD: Thank you very much.

MS. SADOVSKY: Thank you.

THE COURT: Yes. I certainly know that these parties have certainly been through the ringer in trying to finalize all of this, but at this point I think it's going to have to be the appellate court that tells you one way or the other beyond what I said.

MS. SADOVSKY: And, Your Honor, how would you like us to handle the order, then, denying --

THE COURT: Would it be possible to have a simple, one-sentence order and have the presiding judge sign off on it with both of you saying approved as to form only?

MS. SADOVSKY: Absolutely.

MR. MEAD: That will be fine, Your Honor.

MS. SADOVSKY: I'll be happy to do that.

THE COURT: Okay. Then you can get that done immediately.

MR. MEAD: Okay. Again, apologize for

bothering you when you're on vacation.

THE COURT:  No.  I didn't mind at all, and I wish you all the best on your summers.

MS. SADOVSKY:  Thank you very much.

MR. MEAD:  Thank you.

THE COURT:  You're welcome.

(Proceedings adjourned.)

STATE OF TEXAS

COUNTY OF BEXAR

        I, Kayleen Rivera, Certified Court Reporter in and for Bexar County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of the proceedings requested in the above-styled and numbered cause, all of which were reported by me.

        I further certify that the total cost for the preparation of this Reporter's Record was paid by Mr. Robert Willmann.

        To which I certify on this the 3rd day of August, 2015.


                        /s/ Kayleen Rivera
                        Kayleen Rivera, CSR 5364
                        Auxiliary Official Court Reporter
                        Criminal District Court Administration
                        101 W. Nueva, Suite 301
                        San Antonio, Texas 78205
                        Telephone:  210.335.2081
                        Exp:  12-31-2016